## No. 9,955.

LEHMAN, ABRAHAM & CO. VS. JAMES GODBERRY, JR.—EMILE LEG-
ENDRE, THIRD OPPONENT.

In case a junior mortgagee, for a consideration that is satisfactory to himself, inter-
venes in a subsequent act of mortgage in favor of a senior mortgagee to secure planta-
tion advances to the mortgagor, and postpones thereto the rank and priority of his
own, has no ground of complaint if the proceeds of the crop, to which the advances
were made, are applied to its discharge, even though the advances were not necessary
plantation supplies, there being no clause in the act making such a limitation.

Such a clause being incorporated in the *proces verbal* of the deliberations of a famfly
meeting, recommending the postponement—the intervenor being an interdict—will not
be considered as a restriction on the contract of mortgage in the absence of other pro-
visions on the subject therein contained.

The phrase "that said sum of $20,000 shall be exclusively *used* for the cultivation of the
crop," indicates that a duty was imposed on the mortgagor who borrowed the money,
and not on the lender, who could not control its *use* or destination.

APPEAL from the Civil District Court for the Parish of Orleans.
Houston, J.

*White & Saunders* for Plaintiffs and Appellees.

*E. W. Huntington, James Legendre,* and *Berault & Chenet* for Third
Opponent and Appellant.

The opinion of the Court was delivered by

WATKINS, J.   This is a third opposition, in which Emile Legendre, a junior mortgage creditor of the defendant, James Godberry, seeks to regulate the distribution of the proceeds of the sale of the Terre Haute plantation, in satisfaction of the first mortgage of plaintiffs for the sum of $23,458.00, and of his own for $60,000.00.   His claim is that the amount of plaintiffs' demand against Godberry is excessive and should be reduced to $15,400.58, and that when a sufficient amount of the proceeds of sale of the mortgaged property has been applied to extinguish it, there will remain a surplus of $12,000 to be applied to Godberry's indebtedness to him.

This controversy arises on the following state of facts, viz.:   On the 22d of December, 1883, the defendant consented a mortgage on

his Terre Haute plantation in the parish of St. John the Baptist, in favor of Edward F. Stockmeyer & Co., to secure his six notes of $10,000 each, with interest, etc. On the 23d of January, 1884, he consented a mortgage in favor of plaintiffs, as his cotton factors and commission merchants, to secure his four notes, aggregating $42,000, in which E. F. Stockmeyer & Co. intervened and granted them (Lehman, Abraham & Co.) priority in rank. This indebtedness to plaintiffs was subsequently reduced to the amount now claimed by them, by the application thereto of the proceeds of the crop of 1884.

On the 15th of November, 1884, E. F. Stockmeyer was interdicted, and Carl Stockmeyer appointed his curator. On these moneys, it seems the defendant had operated his plantation prior to the beginning of 1885, though unsuccessfully, and by which accumulated indebtedness he was embarrassed. In this position of affairs plaintiffs were unwilling to make him any further advances, and at first, declined to make them, and suggested that he look for another merchant who would take up the debt due them and advance him the amount he required to carry on his plantation for the year 1885. He made the effort and failed and returned to the plaintiffs and renewed his entreaties for assistance. After some deliberation they consented to give it on the condition that *he* should obtain the postponement of the Stockmeyer mortgage to one he should grant in their favor, securing said advances for 1885. To accomplish this object it was necessary that a family meeting should be convened, on behalf of the interdict, to recommend said postponement.

Thereupon the curator presented to the court a petition for the convocation of a family meeting, in which the following representations are made, viz. :

"That said Lehman, Abraham & Co. are on the point and have threatened to foreclose their first mortgage against said plantation; that at the present juncture and critical condition of the money market your petitioner is of opinion and avers that a forced sale of said property at the present moment, under said first mortgage, would seriously and materially impair the interest and injure this second mortgage claim of said interdict; that the said Lehman, Abraham & Co. are willing to forbear from foreclosing their first mortgage in consideration of their obtaining a priority of mortgage on said Terre Haute Plantation, to secure the future advances which they proposed to make to James W. Godberry during the year 1885, to carry on and cultivate said plantation, which advances up to October, 1885, will probably amount to $20,000, and on the condition that a lien and

privilege will be granted said Lehman, Abraham & Co. on the whole crop and proceeds thereof, to secure the advance which shall be made before and during the grinding, to be to such an amount and such an extent as may be necessary to take off and gather the crops, and as may be consented to by Lehman, Abraham & Co.; to which mortgage of $20,000 for advances made before grinding, the mortgage in favor of Edward Stockmeyer shall be subordinated in rank, and on condition that no means will be taken to foreclose during the present year the mortgage on behalf of said interdict; and on the further condition that the crops as received shall be first imputed to any advance made *during its shipment* and the mortgage to secure any *ultimate balance up to $20,000 which may exist after imputation of the crops to the advances ;* and the curator of the interdict to be forced to intervene in and sign the act with the above and foregoing stipulations. (The Italics are ours.)

" That the object in view of all parties is to promote the interest of all concerned by enabling said Godberry to make a future crop on said plantation, which will, in all probability, enable him to reimburse not only said advances, but to extinguish the first mortgage of $23,000, above recited, to Lehman, Abraham & Co., and thus enabling the second mortgage of the interdict to become first in rank and priority."

This recital was adopted by the family meeting, and incorporated into the *proces verbal* of their deliberations, and thereafter they made the following declarations and recommendations, viz.:

" And the said members, after mature deliberation, and consultation on the subject matter of said petition, which is hereinafter expressed, unanimously declared that, considering the facts and allegations contained in said petition, and the reasons therein given, which they adopt as their own, it is the interest of the interdict that the mortgage for $20,000 be granted by James W. Godberry, on said Terre Haute plantation, to secure Lehman, Abraham & Co. for the future advances which they propose to make to James W. Godberry, during 1885, to carry on and cultivate said plantation, and which advances, up to October 1, 1885, will probably amount to $20,000.

"That a lien and privilege be granted said Lehman, Abraham & Co. on the whole crop and the proceeds thereof, to secure the advances that shall be made before and during the grinding season (which shall be considered as beginning from October 1, 1885), the latter, *i. e.*, those made during the grinding season to be to such an amount and such an extent as may be necessary to take off and gather the crops, and as may be consented to by Lehman, Abraham & Co.

" To which said mortgage of $20,000, for advances made before grinding, the mortgage granted in favor of Edward F. Stockmeyer, on the 23d December, 1883, before Zenon Miller, recorder of the parish of St. John the Baptist, shall be subordinated in rank.

" *That the said sum of $20,000 shall be exclusively used for the cultivation of the crop of* 1885 *on said Terre Haute plantation.* That Lehman, Abraham & Co. shall not foreclose their mortgage against James W. Godberry, passed before N. B. Trist, notary, in January, 1884, during this present year. That no means shall be taken to foreclose, during the present year, the said mortgage on behalf of said interdict. That the crop, as received, shall be first imputed to any advance made during its shipment. That the mortgage shall secure any ultimate balance, up to $20,000, which may exist after imputation of the crop to the advances. That the curator of the interdict is authorized to *intervene in and sign act with the above and foregoing stipulations.*"

The proceedings of the family meeting were duly approved and homologated, and the act of mortgage executed, conformably thereto. The curator of the interdict intervened and consented to the stipulated postponement.

Under this contract plaintiffs made advances to the defendant, on open account, prior to the 1st of October, 1885, to the amount of $16,424.44; and the same were subsequently increased, during the season, to $54,800.

In June, 1885, plaintiffs sued to judgment their account of 1884, which was secured by their mortgage of that year, and the mortgaged property was sent to sale under it, and that of Stockmeyer; but an insufficient sum was realized to satisfy both demands.

During the pendency of these proceedings the intervenor acquired the Stockmeyer mortgaged notes, with full subrogation to the rights of the interdict.

From the proceeds of the 1885 crop there was enough realized to pay the whole of plaintiffs' advances, and leave a surplus of $790, which was withdrawn by the defendant in January, 1886.

Intervenor's theory and contention is that plaintiffs advanced money to the defendant for purposes and objects foreign to, and in no manner connected with, the cultivation of the crop of 1885, and illegally and unjustly charged same to the proceeds thereof, to his injury and detriment; and that the sum thus advanced and charged exceeds $8,000, which should have been applied to their 1884 account and mortgage; and that, in this manner, his mortgage would have been promoted,

*pro tanto*, in pursuance of the tenor and spirit of the recommendations of the family meeting and the expectation of the parties.

He insists that the advances to be made under the act of mortgage were to have been *exclusively used* for the purpose of cultivating the defendant's Terre Haute plantation; that the plaintiffs were specially charged with the duty of seeing that the money they advanced was thus applied; and that, to their knowledge, said sum of $8,000 was not so applied, and, for that reason, their distributive share of the proceeds of sale should be reduced accordingly.

The evidence shows it to have been the purpose and expectation of the parties that the $20,000 was to be the limit for the advances plaintiffs were to make, during the cultivation of defendant's crop, and antecedent to the commencement of the rolling season, the date of which was indicated as the 1st of October, 1885. And that from that date until the crop was marketed the amount was not limited. In addition to the security of mortgage the defendant consented a lien, and right of pledge in favor of plaintiffs, on all his 1885 crop, to secure the payment of the *whole* debt for advances; and there is a special clause in the mortgage which provides that same "shall secure any ultimate "balance up to $20,000, which may exist after the imputation of the "crop to advances" This stipulation was intended to secure by the mortgage any deficit there might be in the crop pledged.

Undeniably it was the purpose and expectation of the family meeting that defendant should negotiate a loan from plaintiffs of $20,000, to be exclusively used in the cultivation of his crop prior to the 1st of October, 1885; and that, subsequent to that date, defendant was to obtain additional advances—unlimited in amount—on the faith of his pledge of the crop.

The question is, at whose request and for whose benefit was this arrangement consummated?

Most certainly, that of Godberry and Stockmeyer; and why? What was the position of the parties when the negotiations were initiated in the spring of 1885? The plaintiffs held a first mortgage on Terre Haute plantation for $23,000, and were disinclined to permit defendant to increase his indebtedness to them. He owed the Stockmeyer mortgage of $60,000, and could not raise the means to cultivate his plantation. Stockmeyer, curator, was quite apprehensive that the place would not be cultivated, and that plaintiff would enforce their mortgage, then past due, and his security be thereby impaired, if not sacrificed.

He yielded a reluctant consent to the further postponement of his

mortgage to a new one in favor of the plaintiff, securing future advances to the defendant, in the hope that a surplus large enough would be yielded by the venture, when applied to their first mortgage, to satisfy it, and his own would be advanced to the first in rank.

The negotiations were begun and perfected by and between Stockmeyer, curator, and Godberry, plaintiffs merely stipulating the terms and conditions.

When the notes and mortgage were executed, and the rank of the Stockmeyer mortgage postponed thereto, the plaintiffs discounted the defendant's notes and placed the proceeds to his credit. Beyond this they did nothing other than disburse them on his orders. The proceedings of the family meeting formed no part of the act of mortgage. Their only effect was to authorize the curator of the interdict to postpone the rank of his mortgage. Plaintiffs' contract and obligations are to be found in the act of mortgage exclusively. When they paid money out of the fund to his credit, they had and could exercise no further control over same.

They were powerless to control its *use* or destination.

The covenant contained in the *procès verbal* of the family meeting's proceedings that the money should be " exclusively *used* in the cultivation of the crop," was, necessarily, one between defendant and intervenor, inasmuch as the former was the *sole* recipient and beneficiary, and he was left free to draw at will. He was the only one entitled to *use* this fund standing to his credit with the plaintiffs. He had the exclusive charge of his Terre Haute plantation, and the cultivation thereof. Plaintiffs were, in no sense, the defendant's or intervenor's agents in the matter. The relations between the plaintiffs and defendant were those of lender and borrower, *quoad* the discount of the $20,000; but, in regard to the advances plaintiffs were to make, subsequent to the 1st of October, 1885, their relations were those of factor and customer. The situation would be quite different if this were a controversy between plaintiffs and intervenor as to which is entitled to preference on the proceeds of the crop of 1885, by reason of their conflicting privileges thereon. But the intervenor has no lien, or privilege on them, and claims none. He simply contends that plaintiffs had none, and illegally charged to them the moneys they improperly advanced defendant, and to which he would have been entitled.

He insists that plaintiffs should have desisted from making the advances complained of, and retained their value in money for his account.

But, under the contract, was it in plaintiffs' power to have retained any part of the fund resulting from the discount of the defendant's notes, or the proceeds of his crop? If either or both were free from the mortgage and pledge of plaintiffs, were they not subject to the absolute control and destination of the defendant, quite as much as the balance of $790 he drew in January, 1886? They were in no way subject to the Stockmeyer mortgage. There was no imputation of payment made in the act of mortgage, or proceedings of the family meeting.

There was nothing to have hindered defendant from imputing to plaintiffs' account, a part, or the whole of any such sum as they might have thus retained. It would have been out of the intervenor's power to have subjected such surplus to their demands, except by garnishment or seizure.

The defendant having drawn the money from plaintiffs, and closed his account with them by receipting for the balance of $790 that was to his credit on the transactions of the year, imputed same to his 1885 indebtedness to them, and placed it beyond the control of the intervenor. If Godberry violated any moral, or legal obligation in so doing, the intervenor must look to him for the reparation of the loss he has sustained and not to the plaintiffs.

There is nothing in the act of mortgage which imposed on plaintiffs the duty to see that the money advanced was "exclusively used for the cultivation" of Terre Haute plantation; and nothing which prevented the defendant from paying them out of the proceeds of his crop.

Plaintiffs are demanding nothing under the contract of 1885. It subserved the purpose of postponing sale of the plantation and enabled the defendant to make the experiment of another crop. The intervenor's expectations were not fulfilled, the defendant's crop being insufficient to discharge, in any part, plaintiffs' mortgage of 1884.

This is the only loss he has sustained thereby.

At this time the situation of the parties is precisely the same as it was when the $20,000 mortgage was executed. The fatal injury was inflicted by the *first* postponement of the Stockmeyer & Co. mortgage. It was, in its maimed condition, transmitted to the interdict, and the intervenor acquired same with full knowledge.

For the loss he may have suffered, if any, he has no recourse against the plaintiffs.

Judgment affirmed.